# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELSA GARCIA, | ) 1:04cv5848 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Elsa Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 2, 2004, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for supplemental security income on December 20, 2001. AR 247-249.  She alleged that she had been disabled since June 7, 2001, due to "eye sight, diabetic, arthritis, metal plate in hip."  AR 258.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 228-231, 234-237, 240.  On August 25, 2003, ALJ James Berry held a hearing.  AR 184-213.  On October 6, 2003, the ALJ found that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs in the national economy. AR 164-176.  The Appeals Council denied review on May 11, 2004.  AR 159-162.

Plaintiff filed a prior application for supplemental security income on January 12, 2000. AR 74-76.  ALJ Ross denied benefits on July 25, 2001.  AR 13-20.  The Appeals Council denied review on January 29, 2002.  AR 3-4.

<u>Hearing Testimony</u>

ALJ Berry held a hearing on August 25, 2003, in Fresno, California.  AR 184.  Plaintiff appeared at the hearing, along with her attorney, Robert Christenson.  AR 184.  Vocational Expert ("VE") Judith Najarian also appeared and testified.  AR 184.

Plaintiff testified that she was 48 years old at the time of the hearing.  AR 187.  She was 5' 5" tall and weighed 242 pounds.  AR 187.  She has gained about 20 pounds in the last year or two.  AR 188.  She completed the ninth grade.  AR 188.

She has not worked in the past 15 years.  AR 189.  She explained that her arthritis and problems with her legs and fingers keep her from working.  AR 189.  The middle finger on her left hand is always in a drawn-up, claw-like position, and if she carries something, the middle finger on her right hand does the same thing.  AR 190.  It has gotten worse since the last hearing. AR 190.  Since the last hearing, she has developed arthritis in her knee and had to have surgery on a bunion.  AR 191.  She has a rod in her right hip and if she walks a block, her hip and back

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

will hurt. AR 191. The bunion was removed on her left foot, and X-rays done at the time revealed arthritis in her left foot. AR 192. She also has arthritis in her left knee. AR 192.

Plaintiff believed she could stand for about 20 minutes and sit for maybe half an hour before needing to lie down. AR 193. She needs to lie down for half an hour, three to four times per day, because of her back pain. AR 195. She thought she could stand for two hours total in an eight hour day. AR 196. She cannot lift 10 pounds of potatoes but could carry it with both hands. AR 197. She could not do it all day, though, because her hands would get too tired and she has arthritis in her arms. AR 198. She has arthritis in her left shoulder and has problems lifting her left arm high to reach. AR 198.

Plaintiff lives with a friend. AR 198. During the day, she does her housework slowly and sits and watches television and listens to the radio. AR 198. She does the dishes, cooks simple meals, and does the laundry. AR 199.

She testified that she takes Vicodin maybe once a week because she doesn't want to get addicted to it. AR 200. She takes it when her arthritis pain gets bad. AR 200. She also takes ibuprofen for her arthritis pain. AR 200. She explained that there were no side effects that she knew of. AR 200. When asked if it made her drowsy, she responded, "When I take the Vicodin, yeah, it makes me sleepy." AR 200. She sleeps for an hour after she takes the Vicodin. AR 200.

She can cut up one potato before her finger draws up and she needs to stop. AR 201. She can bend, but if she bends long enough, her back hurts. AR 201. Bending also causes her knees to pop. AR 202. Kneeling bothers her right knee too much. AR 202.

When questioned by the ALJ, Plaintiff stated that she supports herself with AFDC and admitted that her six year old grandson still lives with her. AR 203. She has been caring for him since he was two years old. AR 204.

VE Judith Najarian testified that a person of Plaintiff's age and education, with no past work history, who retained the RFC to lift and carry 10 pounds occasionally and up to 10 pounds frequently, can stand and walk for four hours, can sit for six hours, can occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch and crawl, but cannot climb ropes, ladders or scaffold, can occasionally push and pull with the lower extremities, but who must avoid

1  exposure to extremes in cold and heat, could perform the full range of unskilled, sedentary jobs.
2  AR 206. This includes production work (67,595 positions nationally, 6,542 in California),
3  assembly work (105,975 positions nationally, 10,832 in California), and cashiering positions
4  (144,684 positions nationally, 15,461 in California). AR 206.

5  Assuming the same hypothetical individual, who can stand two hours total, walk less than
6  one block, and sit less than four hours, who would have difficulty with more than occasional
7  gross and fine manipulation with bilateral upper extremities, difficulty using the left upper
8  extremities above shoulder level, who cannot bend or kneel, and who must avoid exposure to
9  extreme cold and heat, cold not perform any jobs in the national economy. AR 207.

10  If the person in the first hypothetical had difficulty with the left upper extremity to lift
11  about shoulder level and in performing gross manipulation, there would be about a 75 percent
12  reduction in the numbers of positions available. AR 208. If this same person was precluded
13  from fine manipulation, there would be no jobs available. AR 209.

14  If the person in the first hypothetical could only occasionally reach in all directions, it
15  would eliminate all the cashier positions, and would result in about a 90 percent reduction in the
16  assembly and production positions. AR 209, 211.

17  If the person in the first hypothetical needed to have unscheduled breaks where he would
18  need to rest from one-half to one hour, three to four times per day, this person would not be able
19  to perform any jobs in the national economy. AR 212. If this person had to take an unscheduled,
20  one hour break during the week, there would be no positions available in the national economy.
21  AR 212.

22  Medical Evidence

23  On October 1, 1999, x-rays of Plaintiff's left thumb showed a calcification over the dorsal
24  aspect of the first interphalangeal joint. AR 139. X-rays of her lumbar spine showed
25  degenerative changes of the lumbar vertebral bodies, five lumbar-type vertebral bodies, and
26  curvature of the lumbar spine convexity to the right which could be secondary to muscle spasm,
27  scoliosis, or positional in nature. AR 140.

28

On May 8, 2000, Plaintiff saw treating physician Camilo Guiang, M.D.  AR 130.  She complained of pain in both hands and knees with stiffness, and numbness in both upper arms.  AR 130.  He diagnosed severe osteoarthritis, diabetes mellitus, fibrocystic disease, and diabetic neuropathy.  AR 130.

Also on May 8, 2000, Plaintiff underwent x-rays of her hands and knees.  AR 131.  The x-rays of her hands revealed minimal hypertrophic changes off the margins of some of the carpal bones.  AR 131.  The knee x-rays revealed no significant degenerative changes.  AR 131.

On March 21, 2000, Plaintiff saw Jonathan M. Gurdin for an orthopedic evaluation.  AR 103.  Dr. Gurdin diagnosed (1) prior fracture of the right hip with ORIF, mild shortening and a mild rotational mal-union; (2) pelvic obliquity with a mild lumbar curve, early degenerative changes and myofascitis; (3) synovitis of the second and fifth MP joints of the right hand with mildly restricted motion; (4) probable rotator cuff tendinitis of the right shoulder with slightly restricted motion; (5) chondromalacia of the left knee, minimally symptomatic; and (6) morbid obesity.  AR 105.  Dr. Gurdin noted that, "unquestionably the patient's excessive weight is aggravating her right hip, back and knee complaints."  AR 105.  He expected Plaintiff's conditions to improve with physical therapy and weight loss.  AR 105.  He opined that Plaintiff would have difficulty repetitively bending and working in a bent over position.  AR 106.  She could be on her feet for no more than 60 to 90 minutes at a time, and for about four hours in an eight hour workday.  AR 106.  She could sit for one and one-half to two hours at a time, and for five to six hours out of eight.  AR 106.  Repetitive, strenuous function of the right hand would be difficult.  AR 106.  Pushing, pulling, lifting and reaching overhead with her right arm would aggravate the shoulder pain.  AR 106.

On April 10, 2000, State Agency physician Brian Ginsburg, M.D. completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could occasionally and frequently lift/carry ten pounds, stand and/or walk for at least two to four hours in an eight hour workday, sit about 5-6 hours in an eight hour workday, but was limited in pushing or pulling with her right upper extremity.  AR 108.  She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  AR 109.  She could never climb ropes, ladders or scaffolds.  AR

109.  Plaintiff was limited in reaching in all directions.  AR 110.  These findings were affirmed on July 25, 2000.  AR 114.

On April 25, 2000, Plaintiff was seen in the emergency room at Sierra View District Hospital for a viral, flu-like infection.  AR 116.  A CT scan of the brain was within normal limits.  AR 118.

On November 7, 2000, an x-ray of the lumbar spine revealed advanced degenerative osteoarthritis in the facets of the lower lumber spine.  AR 129.  There was also mild narrowing of the right hip joint space representing post-traumatic degenerative changes.  AR 129.

Plaintiff was seen by Daniel Waltrous, M.D., at the rheumatology clinic at Hillman Health Center on December 19, 2000.  AR 303.  She complained of low back pain and increased pain in her hands and neck.  AR 303.  Examination revealed only mild tenderness in the paralumbar muscles, with no synovitis, no limitation in range of motion or deformities in the peripheral joints.  AR 303.  He recommended medication and stressed the need for exercise and weight loss.  AR 303.

On January 10, 2001, Dr. Guiang completed a Medical Source Statement form.  AR 155.  He opined that Plaintiff could occasionally and frequently lift/carry less than 10 pounds, stand and/or walk for less than two hours and sit continuously for less than six hours.  AR 155.  Her osteoarthritis prevented her from fine manipulation, and her degenerative disc disease of the lumbar spine prevented her from bending, squatting, crawling, climbing, reaching above, stooping, crouching and kneeling.  AR 156.  She could not use either foot for repetitive movements due to her osteoarthritis.  AR 156.  These limitations were supported by x-rays that revealed severe degenerative disc disease of the lumbar spine.  AR 157.  Plaintiff's pain was classified as "moderate," but was frequently severe enough to interfere with attention and concentration.  AR 158.

Plaintiff returned to Dr. Guiang on April 9, 2001.  AR 154.  She complained of shoulder joint pain and bleeding at the umbilical area.  AR 154.  He diagnosed mild cellulitis at the umbilical area, diabetes mellitus and osteoarthritis.  AR 154.

On July 23, 2001, Plaintiff saw Dr. Guiang and complained of persistent left shoulder pain. AR 297. She had tenderness in her left shoulder on abduction and difficulty raising her left arm. AR 297. There was no swelling. AR 297. He referred Plaintiff to the orthopedic clinic. AR 297.

On August 23, 2001, Plaintiff's blood sugar was high despite the maximum dose of glyburide and Glucophage. AR 296. Plaintiff refused to take insulin. AR 296. She complained of polyarthralgia and severe pain. AR 296. He diagnosed her with uncontrolled diabetes and arthritis, and recommended medication. AR 296.

On September 28, 2001, Plaintiff saw J.R. Lee, M.D., at the orthopedic clinic at Hillman Health Care Center, and complained of left shoulder pain for over one year. AR 283. Upon examination, Plaintiff had limitation of her left shoulder joint and diffuse tenderness, but no localized tenderness to the shoulder. AR 283. The shoulder joint was stable. AR 283. Dr. Lee diagnosed Plaintiff with a chronic frozen left shoulder and recommended physical therapy and medication for pain. AR 283.

An x-ray dated October 1, 2001, shows calcific tendonitis and acromioclavicular osteoarthritis in Plaintiff's left shoulder. AR 282.

On October 4, 2001, Plaintiff's blood sugar was high despite the maximum dosage of certain medication. AR 293. Plaintiff refused to take insulin. AR 293. Dr. Guiang diagnosed severe osteoarthritis and insulin dependent diabetes mellitus, uncontrolled. AR 293.

On January 28, 2002, Plaintiff saw Dr. Guiang and complained of left foot and lumbar pain. AR 290. She had tenderness in the lumbar spine and swelling of the lateral surface of the left big toe. AR 290. He recommended testing to rule out gout. AR 290.

Also on January 28, 2002, Plaintiff had x-rays of her lumbosacral spine, hips and left foot taken. AR 306. The x-rays revealed a slightly rightward lumbar curve and a bunion deformity on the right foot with mild osteoarthritic changes in several IP joints. AR 307.

On May 1, 2002, Plaintiff saw Sherry Lopez, M.D. for a consultive internal medicine evaluation. AR 309. Dr. Lopez described Plaintiff as obese and noted a very, very slight limp when Plaintiff walked. AR 310. Ranges of motion of the neck, back, elbows, hips and knees

were within normal limits. AR 311-312. Plaintiff had decreased motion in her left shoulder joint, but her right shoulder was normal. AR 311. She diagnosed right hip pain, status-post surgical intervention for fracture, osteoarthritis, and diabetes mellitus. AR 312. Dr. Lopez concluded that Plaintiff could stand or walk about six hours in an eight hour work day and would be unrestricted in the amount of time she could sit. AR 312. She opined that Plaintiff could lift 20 pounds frequently and 50 pounds occasionally. AR 312. Plaintiff could not do prolonged bending, stooping or crouching. AR 312-313.

On May 24, 2002, State Agency physician Carmen E. Lopez, M.D., completed a Physical Residual Functional Assessment Form. AR 314. He opined that Plaintiff could occasionally lift and carry 20 pounds and 10 pounds frequently, stand and/or walk for at least two to four hours in an eight hour workday, sit 6 hours in an eight hour workday, but could not frequently push or pull with her right lower extremity. AR 315. She could occasionally climb, balance, stoop, kneel, crouch, and crawl. AR 316. Plaintiff was limited in reaching in all directions and had to avoid concentrated exposure to hazards. AR 317-318. These findings were affirmed in October 2002. AR 321.

On July 22, 2002, Plaintiff saw Dr. Guiang and complained of severe pain in both shoulders, the left being worse than the right, and foot pain secondary to osteoarthritis. AR 373. He diagnosed shoulder pain secondary to osteoarthritis, diabetes and osteoarthritis of the foot. AR 373.

On July 31, 2002, Plaintiff underwent x-rays of her left knee. AR 358. The x-rays showed a small bony fragment, possibly representing an avulsion fracture, and mild degenerative osteoarthritis changes. AR 358.

In August 2002, Plaintiff went to the Kaweah Delta Hospital emergency room and complained of left knee pain. AR 340. Dr. Jacobson diagnosed a suspected left knee meniscus tear. AR 342.

In October 2002, Plaintiff reported that she has not been checking her blood sugar at home. AR 369. She was prescribed a new blood sugar monitoring machine. AR 369.

1  In November 2002, Plaintiff stated that her blood sugars at home ranged between 160 and 200. AR 368. Upon testing, her blood sugar was 366. AR 368.

X-rays of Plaintiff's right foot taken on April 21, 2003, revealed degenerative changes involving the first metatarsophalangeal joint with hallux valgus deformity and bunion formation. AR 332.

On June 21, 2003, Plaintiff underwent a bunionectomy on her right foot. AR 330.

X-rays taken on July 9, 2003, of her right foot showed no significant callous formation or periosteal reaction at the operative site. AR 326.

<u>ALJ's Findings</u>

The ALJ first noted that Plaintiff filed a previous application for supplemental security income payments that was denied by the ALJ on April 12, 2000. AR 167. Pursuant to *Chavez v. Bowen,* 844 F.2d 691 (9th Cir. 1988), the ALJ determined that Plaintiff had not rebutted the presumption of continuing nondisability. AR 168.

The ALJ found that the current medical evidence did not establish any significant worsening of Plaintiff's impairments, and that her testimony regarding the frequency and severity of the symptoms alleged was not entirely credible. AR 171. Using the testimony of a vocational expert ("VE"), he found that Plaintiff retained the RFC to perform a significant range of sedentary work. AR 173-174.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (tendinitis and diabetes mellitus) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; (5) but retains the RFC to perform work existing in significant numbers in the national economy. AR 174-175.

---

[3] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

Plaintiff argues that the ALJ erred (1) in finding that Plaintiff did not rebut the presumption of continuing nondisability; (2) in failing to consider the effects of Plaintiff's obesity; (3) in failing to consider the adverse side effects of Vicodin; (4) in failing to follow the VE testimony that most matches the facts of the case; (5) in failing to send Plaintiff to a consultive examination; (6) in finding Plaintiff not credible; (7) in failing to find that Plaintiff had a limitation in reaching with her left upper extremity.

## DISCUSSION

A.   Presumption of Continuing Nondisability

Plaintiff first argues that the ALJ erred in finding that she did not rebut the presumption of continuing nondisability under AR 97-4(9) and *Chavez v. Bowen.* Specifically, Plaintiff argues that her condition has worsened since the previous decision and points to her obesity, right foot problems, left knee pain, left shoulder pain, and uncontrolled diabetes in support of her position.

The principals of res judicata apply to administrative decisions and in order to overcome the presumption of continuing non-disability arising from a prior ALJ's finding of non-disability, plaintiff must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).

After reviewing the prior decision and the new medical evidence, the ALJ concluded that Plaintiff did not meet the burden of proving changed circumstances indicating a greater disability. AR 174. He therefore found that he was bound by the prior RFC finding and resulting nondisability finding. AR 174.

In coming to this conclusion, the ALJ reviewed the evidence that Plaintiff points to in support of her position and correctly noted that there were no new medical findings to support additional limitations. AR 174. He noted her obesity, and that she had gained weight despite being instructed to lose weight and increase her exercise. AR 171. He reviewed Plaintiff's bunion surgery on her right foot, which was apparently successful. AR 170, 174. He also reviewed Plaintiff's history of left knee pain, and found that she was treated conservatively for the pain and that no definitive diagnosis was made other than mild osteoarthritic changes. AR

1  171. There was no joint effusion or deformity, and although Plaintiff was prescribed a knee
2  immobilizer and given crutches for a short time, she was later able to bear weight and walk
3  without assistance. AR 171. As to her left shoulder pain, the ALJ noted that although x-rays
4  revealed calcific tendonitis and osteoarthritis, there was no evidence of fracture or dislocation
5  and Plaintiff was treated conservatively. AR 169. He also noted that although she demonstrated
6  limited range of motion, the shoulder joint was stable. AR 169. Finally, the ALJ noted
7  Plaintiff's periods of high blood sugar, but determined that Plaintiff's blood sugar was under
8  control with adequate dosages of oral medication. AR 169, 172.

9  Based on the above evidence, the ALJ correctly determined that Plaintiff's impairments
10 did not result in additional limitations. The prior ALJ determined that Plaintiff could perform a
11 wide range of sedentary work, and nothing in Plaintiff's new medical records suggested that any
12 of her alleged impairments changed this RFC. AR 19. In fact, as Defendant points out, Dr.
13 Lopez concluded after her May 2002 examination that Plaintiff could perform at least light work.
14 AR 312. This opinion constitutes substantial evidence to support the ALJ's finding that
15 Plaintiff's condition had not worsened. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

16 B.    Effects of Plaintiff's Obesity
17    Plaintiff next argues that the ALJ failed to consider the effects of her obesity pursuant to
18 SSR 02-01p. Plaintiff also faults the ALJ for noting that she gained weight even after she was
19 told to lose weight.

20 Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation
21 process, including when determining an individual's RFC. "The combined effects of obesity
22 with other impairments may be greater than might be expected without obesity." SSR 02-1p.
23 The Ninth Circuit recently held that, pursuant to SSR 02-1p, the ALJ must consider obesity in
24 determining RFC based on the information in the case record. *Burch v. Barnhart*, 400 F.3d 676,
25 683 (9th Cir. 2005).

26 Here, the ALJ noted that physicians had described Plaintiff as overweight or obese, and
27 that her symptoms may be aggravated by her excess weight. AR 169, 170, 171. Despite the
28 ALJ's finding, however, there was no evidence in the record that Plaintiff's weight limits her

functioning. *See Burch*, 400 F.3d at 683. It therefore appears that the ALJ gave Plaintiff the benefit of the doubt by finding that her excess weight may aggravate her symptoms.

In discussing Plaintiff's obesity, the ALJ also noted that she had gained weight, despite being told to lose weight and exercise more. AR 171. Plaintiff reported that she was 242 pounds at the time of the hearing, and spends most of her day lying down. AR 171. The ALJ stated that there was no evidence that Plaintiff had joined any weight programs or maintained a healthy exercise program in order to reduce her weight and promote better health. AR 171.

Plaintiff argues that the ALJ's statement was improper given the prohibition in SSR 02-1p against finding that an obese claimant who has failed to lose weight, despite a suggestion to do so, has failed to follow prescribed treatment. Plaintiff also points to the statement in SSR 02-1p that, "we will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits."

Plaintiff misunderstands the context of the ALJ's statement. The ALJ did not make these statements in the context of finding that Plaintiff failed to follow prescribed treatment and should therefore be denied benefits on that basis. Instead, the ALJ appears to have made these statements in evaluating the overall nature of Plaintiff's disability and concluding that Plaintiff's impairments resulting from her disability are not as severe as she alleged. *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (ALJ is entitled to draw reasonable inferences from the evidence).

C.      <u>Side Effects of Plaintiff's Vicodin Medication</u>

Plaintiff argues that the ALJ failed to consider her testimony that she takes Vicodin once a week at unscheduled times and that it makes her so drowsy that she needs to sleep for an hour.

Plaintiff correctly argues that the ALJ must review side effects of medication. Side effects of prescribed medication may have a significant effect on an individual's ability to work, and therefore should be considered in making a disability determination. *Varney v. Sec'y of Health & Human Serv.,* 846 F.2d 581, 585 (9th Cir. 1988).

Plaintiff testified that she takes Vicodin maybe once a week because she doesn't want to get addicted to it. AR 200. She first indicated that there were no side effects that she knew of. AR 200. However, when specifically asked if it made her drowsy, she responded, "When I take

1  the Vicodin, yeah, it makes me sleepy." AR 200.  She then explained that she sleeps for an hour
2  after she takes the Vicodin.  AR 200.
3       In his decision, the ALJ noted Plaintiff's testimony that she took Vicodin once a week
4  and that it makes her sleepy.  AR 171.  He found, however, that using the drug once a week does
5  not suggest debilitating pain.  AR 172.  As will be discussed below, the ALJ properly discounted
6  Plaintiff's subjective complaints generally, and he was thus entitled to discount Plaintiff's
7  unsupported testimony about her medication side effects. *Thomas v. Barnhart*, 278 F.3d 947,
8  960 (9th Cir. 2001).
9       In any event, Plaintiff's credibility is certainly questionable, at best, given that she first
10 stated that there were no side effects and only described the sleepiness after being asked
11 specifically if the medication made her drowsy.  Indeed, if she needed to sleep for an hour every
12 time she took the medication, this would likely be a side effect that she would be aware of,
13 without prompting.
14 D.   <u>VE Testimony</u>
15       Next, Plaintiff argues that the ALJ erred by not adopting the VE's response to
16 hypothetical questions that she contends best fit the facts of her case.  She contends that the
17 hypotheticals for which the VE determined that no work existed were supported by her
18 testimony.
19       "Hypothetical questions posed to the vocational expert must set out all the limitations and
20 restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).
21 The testimony of a VE "is valuable only to the extent that it is supported by medical evidence."
22 *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).  The VE's opinion about a claimant's
23 residual functional capacity has no evidentiary value if the assumptions in the hypothetical are
24 not supported by the record.  *Embrey*, 849 F.2d at 422.  The ALJ is not required to accept as true
25 the restrictions contained in a hypothetical question propounded by a claimant's attorney.
26 *Magallanes v. Brown,* 881 F.2d 747, 756 (9th Cir. 1989).
27
28

The ALJ asked two hypotheticals. The first hypothetical included limitations supported by Dr. Lopez and State Agency physicians. AR 205-206. In response, the VE testified that this individual could perform a full range of unskilled, sedentary work.

The second hypothetical included the more restrictive limitations contained in Plaintiff's testimony. AR 207. Plaintiff's counsel asked the remaining hypotheticals, which added restrictions to the ALJ's first hypothetical. For each of these hypothetical individuals, the VE testified that there would be no work available. AR 207-212.

The medical evidence did not support the restrictions included in the second hypothetical question, as the included limitations were based almost entirely on Plaintiff's properly rejected subjective complaints. However, for reasons discussed in the analysis of the limitation in reaching with the left upper extremity argument, the ALJ should have included this limitation in his RFC and therefore adopted the testimony of the VE concerning this additional limitation. The effect of this error will be discussed below.

E.  <u>Consultive Examiner</u>

Plaintiff argues that the ALJ should have required a consultive examination to determine the effect of Plaintiff's left knee osteoarthritis, bunion surgery, and degenerative changes in her right foot on her ability to perform sedentary work. Plaintiff explains that these medical impairments occurred after Plaintiff's May 2002 consultive examination with Dr. Lopez, therefore rendering her opinion incomplete and not reflective of Plaintiff's current condition and limitations.

The decision to obtain a consultive examination is discretionary. 20 C.F.R. §§ 416.917, 416.919a. Pursuant to the regulations, a consultive examination is only required where the evidence as a whole is insufficient to support a decision. 20 C.F.R. §§ 416.917, 416.919a.

Here, although the additional medical evidence was obtained after Plaintiff's consultive examination, it was obtained while Plaintiff was under the care of treating physicians. AR 365-388. None of her physicians indicated that any of these impairments resulted in any type of limitation. Therefore, there was no need to request a consultive examiner because there was no indication that any of these impairments would have altered the ALJ's RFC finding.

F.     Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed in finding her not credible. She points out that she has received consistent treatment, has been prescribed Vicodin for pain, and has made persistent efforts to seek relief.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (*quoting Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimaint's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (*citing Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997)). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id*.

Prior to reviewing Plaintiff's testimony, the ALJ noted his duty to examine the testimony pursuant to SSR 96-7p. AR 170. He then set forth Plaintiff's testimony and concluded that her testimony regarding the frequency and severity of the symptoms alleged was not entirely credible and that her allegations were not fully supported pursuant to SSR 97-6p. AR 171-172. He found that although she claimed she could not stand or walk for prolonged periods, this was not supported by the medical record. AR 172. He also questioned Plaintiff's credibility. For example, he explained that Plaintiff did not admit that she was raising her young grandson until late in the hearing. AR 172. As the ALJ noted, Plaintiff has been the boy's sole caretaker since

he was two years old. AR 172. The ALJ may use "ordinary techniques" in addressing credibility, *Light,* 119 F.3d at 792, and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ also properly noted that Plaintiff's activities of daily living contradicted her allegations. She testified that she took care of all her personal needs, cooked, did house work, watched television, and did laundry. *Thomas,* 278 F.3d at 958. Finally, the ALJ properly found that Plaintiff's lack of work history detracted from her credibility. *Id.*

Although Plaintiff cites factors that may bolster her credibility, these factors certainly do not overcome the factors against her. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id*.

G.     <u>Reaching Limitations</u>

Finally, Plaintiff argues that the ALJ erred by not adopting Plaintiff's asserted reaching limitation with her left upper extremity. She points out that the prior ALJ determined that Plaintiff was limited in reaching in all directions and that a State Agency physician opined that Plaintiff was limited in reaching in all directions. AR 19, 317.

The ALJ reviewed Dr. Lee's finding that Plaintiff had a chronic frozen left shoulder. AR 169. He also reviewed the October 2001 x-ray that revealed calcific tendonitis, and acromioclavicular osteoarthritis. AR 169. Dr. Lee described the x-ray as negative and prescribed physical therapy for two weeks. AR 169. In discrediting Plaintiff's allegations of left shoulder pain, he noted that there was no evidence of rotator cuff problems, no doctor or treating source suggested surgery, and Dr. Lee described the x-ray as "negative." AR 171.

However, even though the ALJ set forth evidence to support his decision, he was bound by the previous ALJ's RFC finding, as discussed above. *Chavez v. Bowen,* 844 F.2d 691, 694 (9th Cir. 1988); AR 97-4(9). As part of his RFC finding, the prior ALJ determined that Plaintiff was limited in reaching in all directions. AR 18-19. Indeed, the current ALJ recognizes that he is bound by the previously determined RFC, yet fails to include a limitation in reaching in all directions. AR 174. Although Plaintiff's argument specifies a limitation involving the left upper

extremity, the prior ALJ's RFC simply included a limitation in reaching in all directions. The ALJ was bound by this RFC, and this analysis will therefore proceed on this basis.

Although this may have been error, it was harmless error at most. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion). The VE testified that a hypothetical individual with the limitations found by the prior ALJ, including a limitation to occasional reaching in all directions, would be unable to perform any of the cashiering jobs, and would be subject to a 90 percent reduction in the assembly and production jobs. 209, 211. AR 208. This would result in 654 production jobs in California (6759 nationally) and 1,083 assembly jobs in California (10,597 nationally). The number of jobs available to Plaintiff in California meets the statutory "substantial numbers" test for alternative work. *See Barker v. Sec'y of Health and Human Serv.*, 882 F.2d 1474, 1478-1479 (9th Cir. 1989).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Elsa Garcia..

IT IS SO ORDERED.

**Dated:   June 3, 2005**             /s/ Dennis L. Beck
3b142a                        UNITED STATES MAGISTRATE JUDGE